IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| KIM JOHNSON-HOWARD, | * |
| Plaintiff, | * |
| v. | * Case No.: GJH-19-614 |
| | * |
| AECOM SPECIAL MISSIONS SERVICES, INC., *et al.*, | * |
| | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Kim Johnson-Howard ("Plaintiff") brings this action against AECOM Special Missions Services, Inc. and AECOM Government Services, Inc. ("Defendants") seeking damages for injuries she alleges she sustained in a fall at a federal building in Reston, Virginia on March 7, 2016. ECF No. 1. Defendants have filed a Motion to Dismiss the suit on several grounds. ECF No. 7. Plaintiff has opposed the motion, ECF No. 9, and Defendants have not filed a reply. No hearing is necessary. *See* Loc. Rule 105.6. (D. Md.). For the following reasons, the Court will deny the Motion to Dismiss.

**I.     BACKGROUND[1]**

On or about March 7, 2016, Plaintiff, a resident of Virginia, was leaving a meeting at a federal building located at 1760 Business Center Drive in Reston, Virginia when she slipped on the wet floor of the lobby and fell to the ground, hitting her head, buttocks, right hip, and back. ECF No. 1 ¶¶ 3, 7. Plaintiff sustained severe and permanent injuries to her head, brain, neck, back, and right hip, among other parts of her body. *Id.* ¶¶ 7, 10. The floor recently had been

---

[1] Unless otherwise stated, these facts are taken from Plaintiffs' Complaint, ECF No. 1, and are presumed to be true.

1

mopped by building maintenance workers who were employees or agents of Defendants, but there were no signs in the vicinity where Plaintiff fell or any other warnings to Plaintiff that the floors were wet or slippery. *Id.* ¶ 8.

Plaintiff filed this action on February 26, 2019, invoking the Court's diversity jurisdiction. *Id.* ¶ 1. The Complaint asserts a single claim of negligence against both Defendants for breaching their duties to inspect and maintain the premises at the building, to warn Plaintiff of hazardous conditions including wet floors, and to perform their duties under their contracts with the federal government in a reasonable and prudent manner. *Id.* ¶¶ 11–12, 15. Plaintiff alleges harm including her personal injuries, medical expenses, lost wages, and pain and suffering, *id.* ¶ 14, and seeks damages of $3,000,000, *id.* at 5.

Defendants filed a Motion to Dismiss Plaintiff's Complaint on April 5, 2019.[2] ECF No. 7. The Motion argues that the Court lacks subject matter jurisdiction and personal jurisdiction over Defendants, making dismissal proper under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2), respectively, that this Court is an improper venue for the suit under Rule 12(b)(3), that the action is untimely and therefore dismissal is required under Rule 12(b)(6), and that dismissal is appropriate under the doctrine of *forum non conveniens*. *Id.* at 1–2. The primary contention underlying these arguments is that Defendants are Virginia residents for jurisdictional purposes, *see id.*, contrary to Plaintiff's allegations in the Complaint that both Defendants have their principal place of business in Germantown, Maryland, ECF No. 1 ¶ 4.

Defendants do not challenge Plaintiff's additional allegations that they are both subsidiaries of AECOM, a multinational corporation, though Defendants clarify that Defendant AECOM Special Missions Services, Inc. is an indirect subsidiary while Defendant AECOM

---

[2] On March 20, 2019, Defendants filed a consent motion to extend their time to respond to the Complaint that remains pending. ECF No. 5. The Court will grant the motion.

Government Services, Inc. is a direct subsidiary. ECF No. 7 at 4–5; ECF No. 1 ¶¶ 4–5. Defendants also offer that they both "provide consulting and operational services to the various intelligence agencies of the United States Government." ECF No. 7 at 5. That description is consistent with Plaintiff's allegation that both Defendants are recipients of multi-million dollar contracts with the federal government to provide facilities maintenance, repairs, janitorial, and other services to various federal facilities in the area of Northern Virginia, including the building in which Plaintiff fell and suffered her injuries. ECF No. 1 ¶¶ 4–5.

## II.     STANDARD OF REVIEW

### A.  Rule 12(b)(1)

Defendants argue that dismissal is appropriate under Rule 12(b)(1) because the parties are not diverse and there is no federal question, thus depriving the Court of subject matter jurisdiction. "A district court should grant a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018) (quoting *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)). "The burden of establishing subject matter jurisdiction rests with the plaintiff." *Demetres v. East West Constr.*, 776 F.3d 271, 272 (4th Cir. 2015). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

### B. Rule 12(b)(2)

A motion to dismiss for lack of personal jurisdiction invokes Rule 12(b)(2). "When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Discovery and an evidentiary hearing are not required to resolve a motion under Rule 12(b)(2). *See generally* 5B Wright & Miller, Federal Practice & Procedure § 1351. The Court may address personal jurisdiction as a preliminary matter, ruling solely on the motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint. *Consulting Engr's Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). In such a circumstance, the plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Consulting Eng'rs Corp.*, 561 F.3d at 276. "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc.* v. *Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir.2003) (citing *Mylan Labs. Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993)).

### C. Rule 12(b)(3)

"A defendant may challenge the sufficiency of plaintiff's choice of venue by way of a motion under Rule 12(b)(3). In the Fourth Circuit, when a challenge to venue is raised, the plaintiff bears the burden of demonstrating that venue is appropriate." *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 549 (D. Md. 2019) (citing *Bartholomew v. Va. Chiropractors Ass'n*, 612 F.2d 812, 816 (4th Cir. 1979)). "To survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a prima facie showing of

venue." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (citing *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1998)). "Unlike a Rule 12(b)(6) motion, evidence outside the pleadings may be 'freely consider[ed]' in ruling on a Rule 12(b)(3) motion." *Am. Ins. Mktg. Corp. v. 5 Star Life Ins. Co.*, 958 F. Supp. 2d 609, 612 (D. Md. 2013) (quoting *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)); *see also Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365–66 (4th Cir. 2012). "All reasonable inferences must still be drawn in the light most favorable to the plaintiff." *Am. Ins. Mktg. Corp.*, 958 F. Supp. 2d at 612 (citing *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 672 (D. Md. 2009)).

**D. Rule 12(b)(6)**

To state a claim that survives a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). To determine whether a claim has crossed "the line from conceivable to plausible," the Court must employ a "context-specific" inquiry, drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 679–80 (quoting *Twombly*, 550 U.S. at 570). When performing this inquiry, the Court accepts "all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

5

"Courts generally do not 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses' through a Rule 12(b)(6) motion." *Balt. Scrap Corp. v. Exec. Risk Specialty Ins. Co.*, 388 F. Supp. 3d 574, 584 (D. Md. 2019) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). "But, 'in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6).'" *Id.* (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)). "However, because Rule 12(b)(6) 'is intended [only] to test the legal adequacy of the complaint,'" *id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)), "[t]his principle only applies . . . if all facts necessary to the affirmative defense clearly appear[] *on the face of the complaint*,'" *id.* (alterations in original) (quoting *Goodman*, 494 F.3d at 464); *accord Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005) ("The raising of the statute of limitations as a bar to [a plaintiff's] cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is apparent on the face of the complaint.").

### E. *Forum Non Conveniens*

"A *forum non conveniens* dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate, and available alternative forum." *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 246 (4th Cir. 2011) (quoting *Kontoulas v. A.H. Robins Co.*, 745 F.2d 312, 315 (4th Cir. 1984)). "When considering a motion to dismiss on *forum non conveniens* grounds, a court must determine that the alternative forum is available to the plaintiff, that the alternative forum is adequate, and that the alternative forum is more convenient in light of the public and private interests involved." *DeFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 800–01 (4th Cir. 2013)

6

(citing *Jiali Tang*, 656 F.3d at 248). A defendant seeking dismissal on *forum non conveniens* grounds "bears the burden of proving the adequacy, availability and overall convenience of the alternative forum." *Id.* (citing *Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010)).

## III. DISCUSSION

Although Defendants raise several theories in support of dismissal, Defendants' Motion essentially relies on two arguments: that Defendants are citizens of Virginia, and that Virginia's statute of limitations for negligence claims applies to Plaintiff's claim. *See* ECF No. 7 at 1–2. Because the Court disagrees and finds that Defendants are citizens of Maryland and that Maryland's limitations provision applies rather than Virginia's, the Court will deny the Motion to Dismiss.

### A. Subject Matter Jurisdiction

Defendants maintain that the Court lacks subject matter jurisdiction over Plaintiff's claim because Defendants are citizens of Virginia and therefore are not diverse from Plaintiff, depriving the Court of diversity jurisdiction. ECF No. 7 at 8. "Under 28 U.S.C. § 1332, a federal district court has original jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states." *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (citing 28 U.S.C. § 1332(a)(1)). "With the exception of certain class actions, Section 1332 requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Id.* (footnote omitted) (citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). "[A] corporation . . . 'shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . .'" *Id.* (quoting 28 U.S.C. § 1332(c)(1)).

7

Prior to the Supreme Court's decision in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), the U.S. Court of Appeals for the Fourth Circuit used one of two different tests, depending on the circumstances, to determine a corporation's principal place of business: "the nerve center test and the place of operations test." *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 170 (4th Cir. 2014) (citing *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999)). Under the latter test, "the place where the bulk of corporate activity occurs is the principal place of business." *Mountain State Carbon*, 636 F.3d at 103 (citing *Athena Auto., Inc.*, 166 F.3d at 290). With its decision in *Hertz*, however, "the Supreme Court rejected the more general 'business activities test,' which measured the amount of business a corporation conducted in a particular state to determine its principal place of business." *Hoschar*, 739 F.3d at 170.

Instead, the Court in *Hertz* "definitively held that, for purposes of diversity jurisdiction, a corporation's principal place of business is its 'nerve center.'" *Id.* (quoting *Hertz*, 559 U.S. at 80–81). The "nerve center" is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities.'" *Id.* at 170–71 (quoting *Hertz*, 559 U.S. at 80). Normally, the nerve center is "the place where the corporation maintains its headquarters," as long as that location is "the actual center of direction, control, and coordination, . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who had traveled there for the occasion).'" *Id.* at 171 (quoting *Hertz*, 559 U.S. at 93). "Similarly, if the record reveals attempts at jurisdictional manipulation—'for example, that the alleged "nerve center" is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat'—courts should analyze 'the place of actual direction, control, and coordination, in the absence of such manipulation.'" *Id.* (quoting *Hertz*, 559 U.S. at 97). In *Hoschar v. Appalachian Power Co.*, the Fourth Circuit squarely held

8

that its prior "place of operations" test was no longer the law after *Hertz* and that the nerve center test that *Hertz* endorsed is the proper means of determining a corporation's principal place of business. *Id.* at 170.

Rather strikingly, Defendants in this case premise their Rule 12(b)(1) argument for dismissal entirely on pre-*Hertz* case law, insisting that the Court should apply the "place of operations test" and conclude that Defendants' principal place of business is Virginia. ECF No. 7 at 8–9. Defendants state that almost all of their employees and officers work in an office in Chantilly, Virginia, where "[n]early all day-to-day operations occur," or report on-site to a governmental client. *Id.* at 9. Defendants attach an affidavit from Terence C. Raley, Sr. Vice President of Contracts & Procurement, Federal at AECOM, the parent of Defendants, who states that his business address is the Chantilly office, that the principal places of business of both Defendants are the same office, and that "[n]early all day-to-day operations, including contracts HR and operational support and leadership[] of the named AECOM defendants occur" in that office, which Defendants consider their "principal place of operations for contracts with United States government intelligence community customers." ECF No. 7-1 ¶¶ 1–2, 8-12.

As Plaintiff cogently responds, Defendants' argument relies on obsolete case law and irrelevant facts. ECF No. 9-1 at 7–15. As the Fourth Circuit explained in *Hoschar*, "if a corporation's day-to-day operations are managed in one state, while its officers make significant corporate decisions and set corporate policy in another, the principal place of business is the latter." 739 F.3d at 172 (citing *Mountain State Carbon*, 636 F.3d at 106); *see also id.* ("[T]he corporation's day-to-day operations are not 'relevant to the "nerve center" test under Hertz.'" (quoting *Mountain State Carbon*, 636 F.3d at 105)).

9

Here, Plaintiff provides copies of both Defendants' filings with the Maryland State Department of Assessments and Taxation and the federal Securities and Exchange Commission, listings on Maryland's online "Business Express" database and the Virginia State Corporation Commission website, and a September 2016 contract between Defendant AECOM Special Missions Services and the federal General Services Administration ("GSA"). ECF No. 9-3. Each of these documents shows that Defendants list a business address of 20501 Seneca Meadows Parkway, Suite 300, Germantown, Maryland 20876. *Id.* at 2, 4, 5, 7, 9–13. The GSA contract includes the provision that "[o]rders maybe addressed to" that address, directed to the attention of Kyle Renehan, Vice President, Contracts. *Id.* at 18. Plaintiffs also provide a copy of Renehan's LinkedIn profile, which appears to state that he is "Vice President, Contracts at AECOM/URS/EG&G" in "Germantown, Maryland." *Id.* at 19.

These materials, interpreted in Plaintiff's favor, raise a more than reasonable inference that Germantown, Maryland is Defendants' principal place of business. First, though the record at this early stage of the litigation is expectedly thin, Plaintiff's evidence shows that at least one of Defendant AECOM Special Missions Services' senior officers responsible for contracting is located in Germantown. ECF No. 9-3 at 18–19. Further, the cover page of the GSA contract bearing that official's name prominently shows the same address, in addition to stating that the contract is for a fifteen-year term for facilities maintenance and management. *Id.* at 13. The fact that the Raley affidavit describes only "day-to-day operations" at the Chantilly address, while giving no indication that direction, control, and coordination of those operations happen there, further supports Plaintiff's position. *See* ECF 7-1 ¶ 11.

Finally, while addresses reported in filings with government agencies are not independently dispositive of the principal place of business question, *Hertz*, 559 U.S. at 97, the

Fourth Circuit has nonetheless placed substantial weight in nerve center analysis on the address used in filings with state and federal agencies. *See Mountain State Carbon*, 636 F.3d at 105 (highlighting that the defendant "told West Virginia, Ohio, and Michigan that its principal place of business was nowhere other than" the place the plaintiff argued was the defendant's nerve center). Here, Defendants have reported to Maryland, Virginia, and the federal government that their business address or principal office is in Germantown, Maryland. ECF No. 9-3 at 2, 4, 5, 7, 9–13. In sum, Plaintiff has put forth sufficient evidence that Defendants' principal place of business is Maryland to meet her burden of establishing this Court's subject matter jurisdiction over her claims.[3] Defendants' motion to dismiss under Rule 12(b)(1) will be denied.

### B. Personal Jurisdiction

Defendants next argue that dismissal is appropriate under Rule 12(b)(2) because the Court lacks personal jurisdiction over Defendants. ECF No. 7 at 9–14. "To enter a judgment that adjudicates the rights of a party, a federal court must have personal jurisdiction over that party. Personal jurisdiction requires valid service of process that comports with due process." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 228 (4th Cir. 2019) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). "[U]nless the party consents to jurisdiction, there must be (1) service that complies with the requirements of an applicable rule or statute, as well as (2) 'minimum contacts' with the forum so that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice[.]" *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Opinions in the wake of the pathmarking *International Shoe* decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear*

---

[3] It is undisputed that Plaintiff is a resident of Virginia and has met the $75,000 amount in controversy requirement for diversity jurisdiction imposed by 28 U.S.C. § 1332(a).

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984)). "Adjudicatory authority is 'specific' when the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Id.* at 923–24 (alterations in original) (quoting *Helipcoteros*, 466 U.S. at 414 n.8). In contrast, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 919 (quoting *International Shoe*, 326 U.S. at 317). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (alterations in original) (quoting *Goodyear*, 564 U.S. at 924). "These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.*

Defendants' argument challenging personal jurisdiction here relies entirely on the Court finding that Defendants' principal place of business is Virginia rather than Maryland. Because the Court does not so find, and instead concludes that Maryland is Defendants' principal place of business, Defendants' argument collapses. Because a corporation is considered to be "at home" in its principal place of business, *Daimler*, 571 U.S. at 137, Defendants are at home in Maryland, and therefore are subject to the general jurisdiction of the Court. Accordingly, Defendants' motion to dismiss under Rule 12(b)(2) will be denied.

**C. Venue**

Defendants next claim that venue in this Court is improper under the federal venue statute, 28 U.S.C. § 1391. ECF No. 7 at 14. 28 U.S.C. § 1391(b) provides:

(b)Venue in General.—
A civil action may be brought in—

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(c)(2) defines "residency" for non-natural persons, explaining that "an entity with the capacity to sue and be sued in its common name under applicable law . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business."

Here, as discussed previously, the Court has personal jurisdiction over Defendants with respect to this or any other suit because Defendants' principal place of business is in this judicial district. *See Daimler*, 571 U.S. at 137. Accordingly, Defendants reside in this district for venue purposes and venue is proper under 28 U.S.C. § 1391(b)(1).

### D. Timeliness and Rule 12(b)(6) Motion to Dismiss

Defendants turn next to Rule 12(b)(6) and argue that dismissal is warranted because Plaintiff's claim is untimely under the applicable statute of limitations. Plaintiff's Complaint does not specify which state's law she intends to invoke with her claim of negligence, but a federal court sitting in diversity jurisdiction must apply the choice of law rules of the forum state to determine which state's law applies to the dispute. *Hawkins*, 935 F.3d at 227 n.9 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Generally, "[u]nder Maryland's choice-of-law principles, tort claims are governed by the law of the state where the alleged harm occurred ('*lex loci delicto*')." *McCoy v. Biomet Orthopedics, LLC*, Nos. ELH-12-1436, ELH-19-

607, 2019 WL 6324558, at *7 (D. Md. 2019) (citing *Lewis v. Waletzky*, 31 A.3d 123, 129 (Md. 2011); *Proctor v. Wash. Metro. Area Transit Auth.*, 990 A.2d 1048, 1068 (Md. 2010)).

That principle, however, only extends to matters of substantive law; Maryland choice of law principles direct that "procedural matters are governed by Maryland law." *Gregoriou v. Explosives Experts, Inc.*, No. CCB–08–384, 2008 WL 3989183, at *2 (D. Md. Aug. 25, 2008) (citing *Sokolowski v. Flanzer*, 769 F.2d 975, 977–78 (4th Cir. 1985)). "In this choice of law context, Maryland courts almost universally view issues pertaining to the statute of limitations as procedural, not substantive." *Akinmeji v. Jos. A. Bank Clothiers, Inc.*, 399 F. Supp. 3d 466, 472 (D. Md. 2019) (citing *Turner v. Yamaha Motor Corp., U.S.A.*, 591 A.2d 886, 887 (Md. App. 1991); *Doughty v. Prettyman*, 148 A.2d 438, 440 (Md. 1959)); *see also Rockstroh v. A.H. Robins Co., Inc.*, 602 F. Supp. 1259, 1262 (D. Md. 1985).

"The only exception to this rule under Maryland law is when the expiration of the statute of limitations period contained in the law of a forum state would terminate a plaintiff's right to maintain an action initiated pursuant to a foreign statute." *Akinmeji*, 399 F. Supp. 3d at 472. "In that case, the statute of limitations is deemed to be substantive. In order for the statute of limitations for a law to be considered 'substantive,' the law must (a) contain a specific statute of limitations; and (b) create a new liability that does not exist at common law." *Id.* (quoting *Slate v. Zitomer*, 341 A.2d 789, 794 (Md. 1975)).

Defendants maintain that Virginia's two-year statute of limitations for personal injury claims applies to this case and that it lapsed on March 7, 2018, two years after Plaintiff's alleged fall. ECF No. 7 at 15 (citing Va. Code. Ann. § 8.01-243). But pursuant to Maryland's choice of law principles, it is Maryland's statute of limitations for personal injuries that applies, not Virginia's. The exception to the rule that statutes of limitations are procedural is irrelevant

14

because Plaintiff's cause of action is not statutory. *See Akinmeji*, 399 F. Supp. 3d at 472. Therefore, applying the general Maryland rule, the statute of limitations for Plaintiff's negligence claim is a procedural matter, and the Court accordingly looks to Maryland law.

In Maryland, claims of "negligence . . . are subject to the statute of limitations articulated in Section 5–101 of the Courts and Judicial Proceedings Article of the Maryland Code which requires that a claim must be filed within three years from the date the action accrues." *Litz v. Md. Dep't of Env't*, 76 A.3d 1076, 1086 (Md. 2013); *see* Md. Code Ann., Cts. & Jud. Proc. § 5.101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."). Plaintiff filed her Complaint on February 26, 2019, before the Maryland statute of limitations expired on March 7, 2019. ECF No. 1. The Complaint is therefore timely and Defendants' motion to dismiss under Rule 12(b)(6) will be denied.

### E. *Forum Non Conveniens*

Defendants finally seek dismissal of the case on *forum non conveniens* grounds, arguing that Virginia provides an adequate alternative forum and that the interests of the parties and the court system would be better served if the case proceeded there. ECF No. 7 at 16–19. "The doctrine of *forum non conveniens*," however, "can be applied only where another forum having jurisdiction is available at the time of the district court's decision to resolve the dispute." *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 202 (4th Cir. 2009) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). "[I]f the statute of limitations has expired in the alternative forum, the forum is not available, and the motion to dismiss based on *forum non conveniens* would not be appropriate." *Id.* (citing *Kontoulas*, 745 F.2d at 316).

In pointing to "Virginia" as an adequate forum, Defendants presumably suggest Virginia state courts, given Defendants' position that all parties are domiciled in Virginia, which would preclude federal court diversity jurisdiction. If this suit were brought in state court, however, it would plainly be time-barred by Virginia's two-year statute of limitations for injury claims. Va. Code. Ann. § 8.01-243. Therefore, Virginia state court is not an adequate alternative forum. *Compania Naviera Joanna SA*, 569 F.3d at 202.

The same conclusion applies if Defendants instead concede that they are Maryland residents and seek adjudication in Virginia federal court. Virginia's choice of law rules, like Maryland's, provide that statutes of limitations are generally considered procedural matters "unless they are so bound up with the substantive law of a claim that the limitations period is itself considered substantive." *RMS Tech., Inc. v. TDY Indus., Inc.*, 64 F. App'x 853, 857 (4th Cir. 2003) (citing *Jones v. R.S. Jones & Assocs., Inc.*, 431 S.E.2d 33, 35 (Va. 1993)). "Statutes of limitation that apply to traditional rights of action in contract and tort are almost always procedural." *Id.* (citing *Jones*, 431 S.E.2d at 35); *see also Olawole v. ActioNet, Inc.*, 258 F. Supp. 3d 694, 704 (E.D. Va. 2017)). Accordingly, Virginia's two-year statute of limitations for injury claims would apply in Virginia federal court as well.

Because that period has expired and Plaintiff's claim would therefore be barred in any Virginia court, Defendants' proposed alternative forum is unavailable. Therefore, Defendants' "motion to dismiss based on *forum non conveniens* [is] not . . . appropriate" and Defendants have failed to meet their burden for *forum non conveniens* dismissal. *Compania Naviera Joanna SA*, 569 F.3d at 202 (citing *Kontoulas*, 745 F.2d at 316).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 7, is denied. A separate Order shall issue.

Date: <u>January 17, 2020</u>　　　　　　　　　　　<u>　/s/　　　　　　　　　　　　</u>
　　　　　　　　　　　　　　　　　　　　　　　GEORGE J. HAZEL
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge