IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| **KIM JOHNSON-HOWARD,** * | |
| Plaintiff, * | |
| v.  * | Case No.: GJH-19-00614 |
| * | |
| **AECOM SPECIAL MISSIONS** | |
| **SERVICES, INC.,** *et al.* | |
| * | |
| Defendants. | |
| * | |
| *   *   *   *   *   *   *   *   *   *   *   *   * | |

## MEMORANDUM OPINION

Plaintiff Kim Johnson-Howard brought this action against AECOM Special Missions Services, Inc., and AECOM Government Services, Inc. ("Defendants"), seeking damages for injuries allegedly sustained in a slip-and-fall at a federal building in Reston, Virginia on March 7, 2016. ECF No. 1. Pending before the Court is Defendants' Motion to Preclude Recovery of Damages for Aggravation of Pre-Existing Conditions, ECF No. 35. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, Defendants' Motion is denied.

**I.   BACKGROUND[1]**

Plaintiff, a resident of Virginia, alleges that on or about March 7, 2016, she was leaving a meeting at a federal building located at 1760 Business Center Drive in Reston, Virginia when she slipped on the wet floor of the lobby and fell to the ground, hitting her head, buttocks, right hip, and back. ECF No. 1 ¶¶ 3, 7. Plaintiff alleges that she sustained severe and permanent injuries to

---

[1] These facts are either undisputed or viewed in the light most favorable to the Plaintiff as the non-moving party.

her head, brain, neck, back, and right hip, among other parts of her body. *Id.* ¶¶ 7, 10. The floor had recently been mopped by building maintenance workers who were employees or agents of Defendants, but Plaintiff contends there were no signs in the vicinity where Plaintiff fell or any other warnings to Plaintiff that the floors were wet or slippery. *Id.* ¶ 8.

Prior to the slip-and-fall at issue, Plaintiff was diagnosed with degenerative disc disease by Dr. Schuler, ECF No. 36-1 at 6,[2] who is a board-certified orthopedic surgeon with a board certification in spine surgery. ECF No. 36-2 at 1–2; ECF No. 35-3 at 1–2. Plaintiff contends that this pre-existing condition in her back was exacerbated by her slip-and-fall on March 7, 2016. ECF No. 36-1 at 9; ECF No. 35-2 at 2.

Defendants deposed Dr. Schuler on March 12, 2021, ECF No. 36-3; ECF No. 35-4. Dr. Schuler testified that his "opinion, if needed at trial, would be that the slip-and-fall has significantly worsened [Plaintiff's] low back condition." ECF No. 36-3 at 12:20–13:7;[3] ECF No. 35-4 at 12:20–13:7. According to Dr. Schuler, he first treated Plaintiff in 2010 for lower back issues, ECF No. 35-4 at 20:1–7, and confirmed that according to Plaintiff's 2010 MRI report, she had a small disk protrusion at L2-L3, which meant that part of the disk material in Plaintiff's back was "extending beyond the normal confines of the disk," ECF No. 35-4 at 25:12–19, that she had a mild disk bulge at L4-L5, *id.* at 25:20–26:7, and that Plaintiff also had a "disk bulge superimposed on a disk protrusion next to the nerve at L5/S1," *id.* at 26:8–12, which Dr. Schuler hypothesized would be "life-related, age-related changes, potentially superimposed upon some genetic versus environmental impacts." *Id.* at 31:19–32:4. Dr. Schuler further testified that he

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[3] Pin cites to deposition transcripts refer to the page numbers generated by the transcripts rather than the page number generated by the ECF system.

saw Plaintiff again in April 2013 and described the condition of her spine as being similar to how it appeared in 2010. *Id.* at 35:12–14. However, he confirmed that upon seeing Plaintiff in 2013, she indicated to him that since 2010, her back pain had "worsened," was "severe," and had become "intractable," which meant that "it continued to bother her and wouldn't let up." *Id.* at 42:2–17. Dr. Schuler did not see Plaintiff again until July 2017. *Id.* at 58:16–20.

With respect to Plaintiff's lower back symptoms in the time between Dr. Schuler's evaluation of Plaintiff in April 2013 and her slip-and-fall, Plaintiff informed Dr. Schuler that her symptoms had resolved, and Dr. Schuler testified that this is supported by written records that were documented after Plaintiff's slip-and-fall, to him and to other providers, indicating that Plaintiff was asymptomatic during this time. ECF No. 36-3 at 62:3–18; ECF No. 35-4 at 62:3–18. Moreover, he testified that he did not have any written records, nor was he aware of treatment that Plaintiff received, or that any providers gave, "after the 2013 treatment to the time of the slip-and-fall in 2016." ECF No. 36-3 at 62:19–63:17; ECF No. 35-4 at 62:19–63:17. He further testified that he would "offer at trial that the patient stated that she didn't have [pain]" between April 2013 and March 6, 2016. ECF No. 36-3 at 65:10-66:2; ECF No. 35-4 at 65:10–16.

Then, Dr. Schuler explained that a comparison of Plaintiff's November 2010 MRI and her June 2017 MRI revealed that Plaintiff had developed "Modic changes at the L4-5 level" and that she "had facet degenerative changes," which were not noted on the earlier MRI study. ECF No. 36-3 at 66:21–67:6. He noted that these changes are "not necessarily" age-related degenerative changes, but that they "can also be related to trauma and injuries." *Id.* at 67:7–12. When specifically asked whether he made a finding as to whether the spine condition on the MRI in 2017 was related to a traumatic incident, Dr. Schuler responded with the following: "I don't recall whether I noted that finding anywhere. If you're asking me my opinion now, that's a

3

different thing, but are you saying did I document it, that's a separate issue." *Id.* at 67:13–20. Additionally, Dr. Schuler responded that it would be a "fair statement," to say that a person experiencing a back injury from a slip-and-fall is more likely to experience symptoms from that injury within two to three weeks after a fall, *id.* at 91:13–20; ECF No. 35-4 at 91:13–20. When asked whether he made an assessment "as to what portion of Ms. Johnson's symptoms in July of 2017 related to the conditions that existed in 2013 as opposed to the fall," Dr. Schuler initially responded: "I don't believe I've quantified it to date," ECF No. 36-3 at 92:8–17; ECF No. 35-4 at 92:8–17, and when asked, for the first time, a very similar question as to his "opinion of the apportionment of any aggravation" of Plaintiff's lumbar spine condition between what existed in 2013 and after her fall on March 7, 2016, *id.* at 92:19–93:2; ECF No. 35-4 at 92:19–93:2, Dr. Schuler responded with the following:

> Let's get to the essence of this case. My belief is that Ms. Johnson had some preexisting pathology in her back: degeneration, herniations, and changes as well as hip arthritis. Maybe some neck abnormalities. They'd be minimal though. Clearly had a historical history of symptoms. Based upon her testimony, these were under control and not requiring treatment for a period of more than a year prior to her slip-and-fall. After her slip-and-fall, she claims that her symptoms were made far worse. And it is my opinion as an expert that people that have preexisting problems in their spine, degenerations, disk herniations, whatever, do far worse with slip and falls because you're now damaging flawed structure, and that can lead to persistent and intractable symptoms. And that is the essence of this case, is that Ms. Johnson had clearly prior injury problems, but based upon her history, which is all we have after 2013, is that they were under control until she slipped and fell and made them worse. And that is typically what we see in people who get involved in injuries, is that they may have gone for a long time with problems, but then it's the injury that puts them over the edge. And I equate this very simply on an anatomic level with a rubber band. You have a healthy, brand new rubber band, it stretches and contracts very easily. You have an old, friable rubber band, you stretch it, and it snaps. And that's the analogy which pertains directly to this case.

*Id.* at 93:3–94:20; ECF No. 35-4 at 93:3–94:20. When asked for a second time whether he apportioned Plaintiff's "intractable" pain in 2013 to her pain after March 7, 2016, he responded:

4

> Wow. I'm not sure how to answer this on so many levels. I don't believe that I have done any apportionment, but as I've already stated in my answer, it is my understanding, based upon the patient's history given to us, that her symptoms were under control until she slipped and fell, and then they weren't. And that's what led to the ongoing problems, complaints, and need for treatment. That is the area that is being covered by this claim is my understanding.

*id.* at 95:3–20; ECF No. 35-4 at 95:3–20. When asked the same question a third time, Dr. Schuler simply stated that "[a]ll of the treatment that she received after her slip-and-fall through the end of my treatment is directly related to her slip-and-fall injury and need for treatment of that[.]" ECF No. 36-3 at 96:2–17. After being asked the question for a fourth time, Dr. Schuler explained that Plaintiff "told us that her intractable pain had resolved. So I'm not apportioning anything to what was a historic statement versus what the patient tells me were her symptoms." *Id.* at 97:3–14. Dr. Schuler again explained that he analyzed Plaintiff's case "based on the patient's history, that she was asymptomatic, which means she did not have intractable pain; therefore, all of it is directly related to the slip-and-fall." *Id.* at 97:19–98:2. When asked the same question regarding any apportionment of Plaintiff's pain for a fifth time, Dr. Schuler clarified, for the final time, that:

> Just because the note in 2013 said she had intractable pain doesn't mean it couldn't have gone away. And based on the patient's history presented to us . . . the slip-and-fall was when she said her symptoms recurred and worsened and became intractable after 2016. And that's what we're treating her in relation to . . . According to her history, these symptoms resolved. And so based on that, there weren't symptoms prior that we're apportioning to. And as far as the pathology that she had, it is very plausible, and in this case, I believe the case, that the slip-and-fall made her symptoms worse because of injury, as I've already outlined, into abnormal structures. And that is why she had ongoing pain.

*Id.* at 98:13–100:2.

Plaintiff filed this action on February 26, 2019, invoking the Court's diversity jurisdiction. ECF No. 1 ¶ 1. The Complaint asserts a single claim of negligence against both Defendants for breaching their duties to inspect and maintain the premises at the building, to

5

warn Plaintiff of hazardous conditions including wet floors, and to perform their duties under their contracts with the federal government in a reasonable and prudent manner. *Id.* ¶¶ 11–12, 15. Plaintiff alleges harms including personal injuries, medical expenses, lost wages, and pain and suffering, *id.* ¶ 14, and seeks damages of $3,000,000, *id.* at 5. On April 5, 2019, Defendants filed a Motion to Dismiss Plaintiff's Complaint, ECF No. 7, which, on January 17, 2020, the Court denied, ECF No. 11. On January 31, 2020, Defendants filed an Answer to Plaintiff's Complaint, ECF No. 14. On April 12, 2021, Defendants filed the now pending Motion to Preclude Recovery of Damages of Aggravation of Pre-Existing Conditions, ECF No. 35, which the Court interprets to be a partial motion for summary judgment. Plaintiff opposed the Motion on April 26, 2021, ECF No. 36, and Defendants replied on April 27, 2021, ECF No. 37.

## II.   STANDARD OF REVIEW

"Under [Federal Rule of Civil Procedure] 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. Importantly, at the summary judgment stage, it is not the Court's function to weigh the evidence but simply to decide if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986). A dispute of material fact is genuine if the conflicting evidence creates fair doubt, *Cox v. Cty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001), such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505. Nevertheless, a "mere scintilla of proof" is not enough to defeat a motion for summary judgment. *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003) (citing *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505). To defeat the motion, the party opposing summary judgment must submit evidentiary materials showing facts on the basis of which the finder of fact could reasonably decide the case in its favor. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper. *Id.*

### III.    DISCUSSION

Although Defendants' Motion fails to identify the rule pursuant to which it seeks relief, the Court views it as a partial motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendants' Motion contends that "Plaintiff should be precluded from claiming or seeking an award at trial for aggravation of the condition of her cervical and lumbar spine," ECF No. 35 at 2, because Plaintiff's treating physician, whom Plaintiff proffered as an expert and Defendants have since deposed (1) "conceded at deposition that he did not apportion the aggravation," and (2) did not establish which symptoms were pre-existing and not related to the slip-and-fall, *id.* at 1–2, 13–14. Therefore, Defendants contend Plaintiff failed, as a matter of

Virginia law, to "proffer that part of the damages for which the AECOM Defendants are responsible for a jury to determine without speculation." *Id.* at 2, 15.[4]

The parties agree that Virginia substantive law applies, *see* ECF No. 35 at 11; ECF No. 36 at 5, and "[u]nder Virginia law, a jury may not be allowed to speculate on either the cause or amount of damages." *Parkridge Phase Two Assocs. v. Lockheed Martin Corp.*, 172 F.3d 44 (4th Cir. 1999). "To recover damages in any case, a plaintiff must prove with reasonable certainty the amount of his damages and the cause from which they resulted. There can be no recovery where speculation or conjecture must be resorted to in order to determine what caused the damage complained of." *Hale v. Fawcett*, 202 S.E.2d 923, 925 (Va. 1974) (citing *Barnes v. Quarries*, Inc., 132 S.E.2d 395, 397-398 (Va. 1963). Additionally, however, "[i]t is axiomatic that a defendant who causes injuries to a plaintiff with a preexisting condition must take the plaintiff as he finds him. Although not responsible for the preexisting condition itself, he is liable for any exacerbation of it caused by his tortious conduct." *Bradner v. Mitchell*, 362 S.E.2d 718, 722 (Va. 1987) (citing *Ragsdale v. Jones*, 117 S.E.2d 114, 118 (1960)). And as Plaintiff notes, this principle is reflected in the Virginia model jury instructions specific to pre-existing conditions.[5] *See* ECF No. 36 at 9–10; *see also Washington v. Hewlett*, No. LL-927-4., 1988 WL 619300, at *1 (Va. Cir. Ct. Aug. 1, 1988) (denying motion to set aside jury verdict and award a new trial where court granted aggravation of pre-existing condition jury instruction); *State Farm Mut.*

---

[4] For the purposes of the pending Motion, Defendants presume the admissibility of Dr. Schuler's testimony, but do not "waive the right to make evidentiary arguments should the Motion be denied." ECF No. 37 at 4 n.3.

[5] Virginia Model Jury Instruction No. 9.030, entitled "Aggravation of Pre-Existing Condition" states the following:

"If you find that the plaintiff had a condition before the accident that was aggravated as a result of the accident or that the pre-existing condition made the injury he received in the accident more severe or more difficult to treat, then, if you find your verdict for the plaintiff, he may recover for the aggravation and for the increased severity or difficulty of treatment, but he is not entitled to recover for the pre-existing condition." *See* Virginia Model Jury Instructions – Civil, Virginia Courts (Released Mar. 20, 2020), https://www.vacourts.gov/courts/circuit/resources/model_jury_instructions_civil.pdf.

*Auto. Ins. Co. v. Futrell*, 163 S.E.2d 181, 185 (Va. 1968) (noting that it was not error to give aggravation of pre-existing condition jury instruction where evidence provided that plaintiff previously suffered from two heart attacks and his treating physician testified that the automobile accident "directly contributed to the re-occurrence of his heart failure[.]").

Defendants are correct that Plaintiff has the burden of proving damages from her slip-and-fall with "reasonable certainty," *see Hale*, 202 S.E.2d at 925, however, "[a]n absolute certainty as to the amount of the damages is not essential when the existence of a loss has been established. The quantum may be fixed when the facts and circumstances are such as to permit ... an intelligent and probable estimate thereof." *Pebble Bldg. Co. v. G. J. Hopkins, Inc.*, 288 S.E.2d 437, 438 (Va. 1982) (alteration in original) (internal quotations and citations omitted). At this point in the discovery process, Plaintiff has provided evidence that Dr. Schuler's opinion, based on his review of available evidence, *see* ECF No. 35-4 at 13:12–16, 20:1–21, 31:3–11, 35:2–41:16; ECF No. 36-3 at 92:19–93:2, 97:3–14, 98:13–100:2, is that the slip-and-fall "significantly worsened" Plaintiff's "low back condition," ECF No. 36-3 at 12:20–13:7, and that "all of the treatment" Plaintiff received after her slip-and-fall, "through the end of [his] treatment, is related to her slip-and-fall injury and need for treatment of that," *id.* at 96:13–17; *see also* ECF No. 36-1 at 11–12 (Plaintiff's interrogatory answers identifying $95,749.41 of itemized medical expenses to date).

Defendants cite to *Hale* in support of their argument that Plaintiff failed to present "any evidence to show the share of damages for which it is (purportedly) responsible," ECF No. 35 at 12, because there, the Supreme Court of Virginia held that "[w]hen there is evidence of damage from several causes, as to a portion of which a defendant cannot be held liable, the burden is on a plaintiff to present evidence which will show 'within a reasonable degree of certainty' the share

9

of damages for which a defendant is responsible." 202 S.E.2d at 925 (citing *Smith v. The Pittston Company*, 127 S.E.2d 79, 82 (Va. 1962)). Defendants' reliance on *Hale* is misplaced and fails to support a finding in their favor.

In *Hale*, plaintiff's corn crop was destroyed by defendant's cattle and hogs entering plaintiff's property through openings in a fence, which plaintiff argued defendant was responsible for maintaining. *Id.* At trial, experts and witnesses testified that the cattle entered though a portion of the fence, which both plaintiff and defendant bore the responsibility of maintaining. *Id.* The Supreme Court of Virginia reversed the judgment for the plaintiff because he failed to produce evidence sufficient for a jury to form a "reasonable estimate of what portion of the damage was caused by cattle entering through the narrow opening between the cattle guard and the gate post," which was defendant's responsibility, and "what portion was caused by cattle entering through and over the division fence," which was Plaintiff's responsibility. *Id.* Thus, because plaintiff failed to proffer sufficient evidence to prove "with reasonable certainty" defendant's share of the damage, "the proof was too uncertain to allow a jury to apportion part or all the proved damages to the acts for which the defendant was responsible," such that the issue should not have been submitted to the jury. *Id.*

The factual circumstances in *Hale* are distinguishable from the instant case. Here, when viewing the facts in the light most favorable to Plaintiff as the non-moving party, Plaintiff's pre-existing lower back issues "were exacerbated" by her slip and fall and nothing else, *see* ECF No. 36-1 at 9. Indeed, there is evidence in the record that prior to the fall, the pain from her prior

injury had resolved. *See* ECF No. 36-3 at 93:3–94:20, 97:3–14, 97:19–98:2; ECF No. 35-4 at 93:3–94:20. Therefore, *Hale* is inapposite.[6] Accordingly, Defendants' Motion must be denied.

Moreover, it is evident that the dispute here is one of material fact as the parties essentially disagree about whether Plaintiff's pre-existing lower back condition was aggravated at all by her slip-and-fall on March 7, 2016. The evidence in the record indicates that it is Dr. Schuler's opinion that Plaintiff's pre-existing lumbar spine issues, for which he treated Plaintiff initially in 2010 and again in 2013, "were under control until she slipped and fell and made them worse," ECF No. 36-3 at 93:3–16, and this assessment was based on Plaintiff's own account of her symptoms during this period, which Dr. Schuler testified is memorialized in written records that were documented after the slip-and-fall, *id.* at 62:19–63:17. Although Defendants presume, for the purposes of this Motion, the admissibility of Dr. Schuler's testimony, ECF No. 37 at 4, Defendants disagree with Dr. Schuler and argue that "the assumptions that Dr. Schuler makes to offer the opinion as to aggravation are, in itself, speculative," ECF No. 35 at 14–15, in part because Dr. Schuler admitted that he did not have any written records of any treatment that Plaintiff received "after the 2013 treatment to the time of the slip-and-fall," ECF No. 36-3 at 62:19–63:17. This is a disagreement over a material fact.

"The judge's 'function' in reviewing a motion for summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Jud. Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425, 434 (D. Md. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *accord Guessous v. Fairview Prop.*

---

[6] In reply, Defendants note that *Omega Protein, Inc. v. Forrest*, 732 S.E.2d 708 (Va. 2012) involved facts more similar to the pending case because it involved a personal injury claim that also involved a pre-existing injury. The facts there are nonetheless distinguishable. There, plaintiff's claim was that Defendant was negligent for allowing Plaintiff to perform his physically demanding job without first doing an MRI of his back to assess pre-existing injury; however, Plaintiff did not provide evidence of what the MRI would show, leaving the jury to speculate. *Id.* at 713. No similar degree of speculation would be asked of the jury here.

*Inv.*, LLC, 828 F.3d 208, 216 (4th Cir. 2016)). Thus, at this juncture, it would be inappropriate for the Court to resolve any disputes of fact or make any credibility determinations as to either Plaintiff or Dr. Schuler and his testimony with respect to the issue of aggravation, *see Wilson v. Prince George's Cty.*, 893 F.3d 213 218-19 (4th Cir. 2018), as "it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *Jud. Watch, Inc.*, 399 F. Supp. at 434 (citing *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006)). Thus, Defendants' Motion must be denied for this reason as well.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Preclude Recovery of Damages for Aggravation of Pre-Existing Conditions, ECF No. 35, is denied. A separate Order shall issue.

Date: <u>February 8, 2022</u>                              __/s/_____
                                                          GEORGE J. HAZEL
                                                          United States District Judge