# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KIM JOHNSON-HOWARD,                    *

    *Plaintiff*,                           *

                       **Case No. 8:19-cv-00614-JRR**

    v.                                     *

AECOM SPECIAL MISSIONS                 *
SERVICES, INC., *et al.*,
                      *

    *Defendants*.                          *

*   *   *   *   *   *   *   *   *   *   *   *   *

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Defendants AECOM Special Mission Services, Inc. and AECOM Government Services, Inc.'s Motion for Summary Judgment (ECF No. 56; "the Motion"). The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2023).

## I.    BACKGROUND

Plaintiff Kim Johnson-Howard brings this action against AECOM Special Mission Services, Inc. and AECOM Government Services, Inc., seeking damages for injuries she sustained in a slip and fall at a federal building in Reston, Virginia on March 7, 2016. (ECF No. 1.) Plaintiff alleges that Defendants are recipients of multi-million-dollar contracts with the federal government to provide facilities maintenance, repairs, janitorial, and other services to various federal facilities in the area of Northern Virginia, including the building in which Plaintiff alleges she fell and suffered injuries. (ECF No. 1 ¶¶ 4-5.)

Plaintiff alleges that, on the date of the incident, she slipped on the wet floor of the lobby, fell to the ground, and hit her head, buttocks, right hip, and back.  *Id.* ¶¶ 3, 7.  Plaintiff alleges further that she sustained severe and permanent injuries to her head, brain, neck, back, and right hip, among other parts of her body.  *Id.* ¶¶ 7, 10.

On February 26, 2019, Plaintiff filed the Complaint.  (ECF No. 1.)  The Complaint asserts a single cause of action for negligence.  *Id.*  The prayer for relief seeks $3,000,000 plus interest and any other relief the court deems just and proper.  *Id.* at 5.  On March 5, 2019, Defendants filed a motion to dismiss on several grounds, including lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to file the case within the statute of limitations. (ECF No. 7.)  On January 17, 2020, the court denied the motion.  (ECF Nos. 11 and 12.)  The parties engaged in discovery.  Now that discovery has closed, Defendants move for summary judgment on Plaintiff's claim.  (ECF No. 56.)  Defendants argue they are entitled to summary judgment because: (1) they are entitled to derivative government immunity; (2) Plaintiff failed to designate a standard of care/liability expert; (3) Plaintiff cannot establish constructive notice required for a *prima facie* case of negligence; and (4) Plaintiff failed to provide evidence of the lost wage damages she seeks.  (ECF No. 56-1 at 17-18.)

## II.   LEGAL STANDARDS

### A.   <u>Federal Rule of Civil Procedure 12(b)(1)</u>

Relying on *Yearsley v. W.A. Ross Const. Co.*, Defendants argue that, as government contractors, they are entitled to derivative government immunity because "[t]here is absolutely no evidence that any authority was exceeded or that no authority was validly conferred."  (ECF No. 56-1 at 18; citing *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 20-21 (1940)).  As discussed below (*see* Section IV.A., *infra*), "under *Yearsley*, a government contractor is not subject to suit if

2

(1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning it acted within its constitutional power." *In re KBR, Inc., Burn Pit Litigation*, 744 F.3d 326, 342 (4th Cir. 2014).

The Fourth Circuit "treat[s] the *Yearsley* doctrine as derivative sovereign immunity that confers jurisdictional immunity from suit." *See Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (explaining that "it is clear that '[i]f the basis for dismissing a *Yearsley* claim is sovereign immunity, then a *Yearsley* defense would be jurisdictional' because 'sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction'") (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)); *see In re KBR, Inc.*, 736 F. Supp. 2d 954, 964 (D. Md. 2010) (denying motion to dismiss for lack of subject matter jurisdiction where the court concluded that the defendants were not entitled to derivative sovereign immunity under *Yearsley*). Because sovereign immunity deprives the court of subject-matter jurisdiction, sovereign immunity can be raised at any time. *See Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) (explaining that "[a] litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance"); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

"The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019). Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge. *Id.* A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.* A factual challenge asserts "that the

jurisdictional allegations of the complaint [are] not true." *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration.")). "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id.*

The court construes Defendants to raise a factual challenge to the court's subject matter jurisdiction, asserting that the doctrine of derivative government immunity bars Plaintiff's Complaint. Relevant here, in a factual challenge to the court's subject matter jurisdiction, "the trial court may go beyond the complaint" to resolve the issue. *Kerns*, 585 F.3d at 193; *see Cunningham v. Gen. Dynamics Info. Tech., Inc.*, No. 16-cv-00545, 2017 WL 1682534, at *6 (E.D. Va. May 1, 2017), *aff'd*, 888 F.3d 640 (4th Cir. 2018) (deciding the merits of the *Yearsley* jurisdictional inquiry after "the parties engaged in a fulsome discovery process" and noting that whether discovery is conducted "through summary judgment or through a 12(b)(1) inquiry is of no practical import"). Because sovereign immunity is akin to an affirmative defense, a defendant bears the burden of demonstrating that sovereign immunity exists. *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).

**B.    <u>Federal Rule of Civil Procedure 56</u>**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v.*

4

*Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id*. at 249.  Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).  This court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

In undertaking this inquiry, the court considers the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  The court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).  Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014).

## III.    UNDISPUTED MATERIAL FACTS

On March 7, 2016, around 9:15 a.m., Plaintiff was on her way to a job interview.  (Kim Johnson-Howard Dep. 138:5-10, 182: 11-16, 200:3-5, ECF No. 56-2.)  Plaintiff arrived at the

federal building for her interview between 9:35 a.m. and 9:40 a.m., and entered the building from

the side between 9:45 a.m. and 9:50 a.m.  *Id.* at 200:6-8, 12-17.  After Plaintiff entered the building,

she looked at the lobby floor, which was constructed of white marble.  *Id.* at 193:1-2, 201:13-17.

Plaintiff walked directly across the lobby to the elevators.  *Id.* at 201:2-7.  Plaintiff did not notice

any wet floor signs or any substance on the lobby floor after she entered the building and before

she got on the elevator.  *Id.* at 202:2-4, 5-12.

Plaintiff left the interview around 10:40 a.m.  (Johnson-Howard Dep. 203:21-204:2, ECF

No. 57-3.)  As Plaintiff stepped off the elevator and made a left to exit the building, she saw "no

obstructions or anything but a white marble floor."  *Id.*. 213:6-22, 268:6-13, 269:11-14.  When

Plaintiff took her first two steps off the elevator, she saw a man mopping the lobby floor 50 feet

away from her.  *Id.* 221:15-17, 222:20-223:2, 224:2-3.  Plaintiff also saw a wet floor sign next to

his bucket.  *Id.* 226:12-15.  On her fourth step out of the elevator, Plaintiff said "have a good day"

to the escort personnel.  *Id.* 215:18-21.  On her fifth step, Plaintiff's neck snapped back, and she

fell and hit her head.  *Id.* 221:18-19, 223:4-5.

Defendants are independent government contractors and provide facilities maintenance,

repairs, janitorial, and other services to various federal facilities in the area of Northern Virginia,

including the building in which Plaintiff alleges she fell and suffered injuries.

## IV.    ANALYSIS

### A.    <u>Federal Rule of Civil Procedure 12(b)(1) – Derivative Government Immunity</u>

The United States enjoys sovereign immunity from suit unless it has waived that immunity.

*In re KBR, Inc., Burn Pit Litigation*, 744 F.3d 326, 341 (4th Cir. 2014).  Under the Federal Tort

Claims Act ("FTCA"), "[t]he United States waived its immunity from tort suits under certain

circumstances . . . but that waiver is subject to certain exceptions[.]"  *Id.* (internal citations

omitted).   The "discretionary function" exception immunizes the government from "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."   28 U.S.C. § 2680(a).   "The discretionary function exception . . . marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals."   *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984).

"The FTCA explicitly excludes independent contractors from its scope."   *In re KBR*, 744 F.3d at 342.   Specifically,  28 U.S.C. § 2671 provides, in part:

> As used in this chapter and sections 1346(b) and 2401(b) of this title, the term "Federal agency" includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States.
>
> "Employee of the government" includes (1) officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation, and (2) any officer or employee of a Federal public defender organization, except when such officer or employee performs professional services in the course of providing representation under section 3006A of title 18.

28 U.S.C. § 2671.

Therefore, Defendants do not enjoy immunity from liability as express beneficiaries of the protections afforded by the FTCA.   Defendants may, however, be immune from liability by virtue of their status as independent government contractors.   It is this pathway to immunity – known as

7

derivative government immunity – on which Defendants rely.   This construct of immunity dates back at least to 1940 – when the United States Supreme Court issued its opinion in *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940).

In *Yearsley,* a landowner brought a claim for damages against a private contractor that had built dikes in the Missouri River which caused loss to the landowner's land.  *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 19 (1940).  The Court considered whether the private contractor could be liable for engaging in work at the direction of the government by authority of Congress.  *Id.* at 19-20.  In concluding that the private contractor could not be held liable, the *Yearsley* Court explained that "the work which the contractor had done in the river bed was all authorized and directed by the Government of the United States for the purpose of improving the navigation of this navigable river."  *Id.* at 20.  When the "authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress," the *Yearsley* Court concluded, "there is no liability on the part of the contractor for executing its will."  *Id.* at 20-21.  On that basis, the *Yearsley* contractors were not liable to the plaintiff.  *Id.* at 21-22.

"Recently, the Supreme Court reaffirmed [the *Yearsley*] test and expressly stated that as long as the authorization was validly conferred, 'there is no liability on the part of the contractor who simply performed as the Government directed.'"  *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 646 (4th Cir. 2018) (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167-68 (4th Cir. 2016)); *see Butters v. Vance Intern., Inc.*, 225 F.3d 462, 466 (2000) (explaining that derivative sovereign immunity applies to "contractors and common law agents acting within the scope of their employment for the United States"); *In re KBR,* 744 F.3d at 342 (explaining that "under *Yearsley*, a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning it

acted within its constitutional power"); *Mangold v. Analytic Services, Inc.*, 77 F.3d 1442, 1448 (4th Cir. 1996) (holding that derivative immunity applies to the extent the case "involves a discretionary governmental function which has been delegated to the private sector"). "Authorization is 'validly conferred' on a contractor if Congress authorized the government agency to perform a task and empowered the agency to delegate that task to the contractor, provided it was within the power of Congress to grant the authorization." *Cunningham*, 888 F.3d at 646-47 (citing *Yearsley*, 309 U.S. at 20).

The first inquiry—whether the government authorized Defendants' actions—requires a determination of whether Defendants exceeded their authority under the contract. *In re KBR*, 744 F.3d at 344 (referring to consideration of whether the contractor exceeded the "scope of employment"). Defendants are "entitled to derivative sovereign immunity only if [they] adhered to the terms of [the] contract with the government." *Id.* at 345. The Fourth Circuit has construed this inquiry narrowly, such "that the contractor must adhere to the government's instructions to enjoy derivative sovereign immunity; staying within the thematic umbrella of the work that the government authorized is not enough to render the contractor's activities 'the act[s] of the government.'" *Id.*; *see Yearsley*, 309 U.S. at 20 (emphasizing that "[t]he Court of Appeals . . . found it to be undisputed that the work which the contractor had done . . . was all authorized and directed by the Government of the United States"). This feature of the analysis is the death knell for Defendants' immunity argument.

Regarding the contract in the instant case, Defendants aver:

> . . . The United States government engaged the services of Defendant AECOM Special Missions services for cleaning and emptying trash at a building it operated in, pursuant to a contract, which is classified and no authority has been provided to disclose the terms.

***

> Pursuant to that contract, the lobby floor was cleaned through a mechanized process between 5:00 a.m. and 6:00 a.m. daily during the period of the incident. In addition, floor caution signs were displayed during the time of mechanized cleaning. Trash was collected from the receptacles used by government employees daily throughout the entire building. Further, if a government employee made a spill causing liquid to accumulate, a dry mop would be used to abate the condition caused by the government employee. Floor caution signs were displayed during the times when a dry mop is used to abate a wet spill condition created by a government employee.

(Defs.' Answers to Pl.'s Interrog. Nos. 3, 8, Exhibit 2, ECF No. 57-3.)

This case centers considerably on the dispute of material fact as to whether Defendants failed to post a sign warning of the hazard of a wet floor (or took the sign down before the area was dry).   Notwithstanding Defendants' representation of their janitorial and safety practices, the record before the court does not contain evidence as to whether Defendants acted in conformity with, or exceeded the scope of, their government contract.   Defendants, therefore, are not entitled to derivative government immunity.   *In re KBR*, 736 F. Supp. 2d at 968 (concluding that *Yearsley* did not entitle the defendants "to derivative sovereign immunity at this point in time" where "the record does not contain the entire contract, evidence establishing performance in compliance with its terms, or evidence that the military, when necessary, permitted or directed [d]efendants to deviate from the contract's terms").[1]   The court proceeds, therefore, to evaluate the balance of the Motion.

---

[1] The court understands that Defendants have not produced the contract on grounds that the contract is "classified." While the court makes no comment on this one way or the other, because the contract is not available for examination – for whatever reason – the court is unable to determine whether Defendants acted in the scope of, or in conformity with, the contract regardless of whether the evidence of their wet floor practices is uncontested.

### B.     Federal Rule of Civil Procedure 56

#### 1.     Choice of Law

"In an action based upon diversity of citizenship, the relevant state law controls. The district court must apply the law of the forum state, including its choice of law rules." *Bank of La v. Marriott Int'l, Inc.*, 438 F. Supp. 3d 433, 442 (D. Md. 2020) (quoting *Limbach Co., LLC v. Zurich Am. Ins. Co.*, 396 F.3d 358, 361 (4th Cir. 2005)).  Plaintiff filed this case in Maryland, so Maryland is the forum state.  Thus, the court looks to Maryland law to determine which state's law applies to the state causes of actions.  *Bank of La*, 438 F. Supp. 3d at 442.

"For tort claims, Maryland applies the *lex loci delicti* rule . . . [which] dictates 'that in a conflict of law situation . . . where the events giving rise to a tort action occur in more than one State, we apply the law of the State where the injury[,] the last event required to constitute the tort[,] occurred.'"  *Bank of La*, 438 F. Supp. 3d at 442 (quoting *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 620 (Md. 2007)).  The place of the injury is the place where the injury was suffered, not where the wrongful act took place.  *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 511 (4th Cir. 1986).  In the instant case, the parties agree that Virginia law applies to Plaintiff's negligence claim because the alleged harm occurred in Virginia.  The court concurs.

#### 2.     Negligence

Defendants argue they are entitled to summary judgment on Plaintiff's negligence claim for two reasons: (1) Plaintiff failed to establish that Defendants had constructive notice of a hazardous condition or that any condition existed long enough for Defendants to abate or warn against it; and (2) Plaintiff failed to designate a liability expert.  (ECF No. 56-1 at 17-18.)  In order to establish a negligence claim, Virginia law requires that Plaintiff "show the existence of a legal

duty, a breach of the duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King*, 266 Va. 288, 293 (2003).

### a.    Standard of Care

Relying on *Flaherty v. Legum and Norman Realty, Inc.*, Defendants first argue that Plaintiff's failure to designate a liability expert is fatal to her case because she has proffered no evidence on the applicable standard of care.  (ECF No. 56-1 at 17.)  *Flaherty v. Legum and Norman Realty, Inc.,*  281 F. App'x 232 (4th Cir. 2008).[2]

Expert testimony is unnecessary if jurors "as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation."  *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962); *see Beverly Enterprises-Virginia, Inc. v. Nichols*, 247 Va. 264, 267 (1994) (explaining that "expert testimony is unnecessary because the alleged act of negligence clearly lies within the range of the jury's common knowledge and experience").

In *Flaherty*, the plaintiff filed a wrongful death action against a condominium complex. 281 F. App'x at 233.  The plaintiff's wife suffered and died from an illness caused by a bacteria commonly found in natural fresh water and in human-made water systems.  The plaintiff alleged that his wife's disease and resulting death were caused by the defendant's negligent failure to maintain "the common water system at the condominium complex."  *Id.*  The defendant moved for, and was granted, summary judgment because the plaintiff "did not establish the standard of care that a property manager must exercise in maintaining a common water system in a large residential complex."  *Id.* at 234.  The district court explained:

> The existence of a legal duty is a question of law to be decided by the court. Expert testimony is generally required when the subject is

---

[2] *Flaherty* applies Maryland law, which – as mentioned above – does not apply to this case.  Nonetheless, because Defendants rely upon it, the court addresses it.

"so particularly related to some science or profession that it is beyond the ken of the average layman." Generally, a plaintiff must produce expert testimony to prove the standard of skill and care ordinarily exercised by a professional person of the kind involved in the geographical area involved and that the defendant failed to meet these standards.

Here, Maryland law requires expert testimony to establish the standard of care that Defendant Legum & Norman Realty, a professional management company, must exercise relative to the condominium owners. The standard of care that Defendant Legum & Norman, a professional management company, must exercise in maintaining its water system is beyond the knowledge and experience of the average layman. Average laymen are not sufficiently experienced or knowledgeable to assess what proper practices a professional management company must exercise in maintaining and operating a water system in a large residential complex. Because the Court finds that Plaintiff's experts cannot offer expert opinion regarding the standard of care of professional management companies in the Ocean City, Maryland community, Plaintiff cannot prove the element of duty, and, therefore, cannot establish the necessary elements of a negligence claim.

*Flaherty v. Legum & Norman Realty, Inc.*, No. CIV.A.1:05-1492, 2007 WL 4694346, at *13 (E.D. Va., Jan. 4, 2007), *aff'd*, 281 F. App'x 232 (4th Cir. 2008).

The *Flaherty* court further explained:

Average laymen may be familiar and knowledgeable with maintaining and operating a water system in a single residence. However, allowing a juror to compare maintaining the water system within a single house to maintaining a much larger and more complex water system that serves many different units, allows jurors to speculate about the requisite standard of care. The Court finds that there are just too many variables that a juror cannot possibly account for without the aid of an expert, such as size of the system, balancing the concerns of bacteria multiplication and scalding, the number and extent of the pipes associated with the system, number of units serviced by the system, the operations involved in circulation and flow of the water throughout the system, the different responsibilities when the complex is less populated, etc. Such speculation is not permitted.

*Id.* at *14.

13

The instant case differs materially from *Flaherty*.  Although Defendants contract with the federal government to provide facilities maintenance, repairs, and janitorial services, there is nothing to suggest that the standard of care Defendants must exercise in cleaning/mopping the lobby floor is beyond the knowledge and experience of the average layman.  Indeed, the issue of Defendants' alleged acts of negligence involving essentially a failure to make sure the marble floor was not wet or, if it were, that signs alerted people to the hazard "is quite simple and within the common knowledge and experience of a lay jury."  *Coston v. Bio-Medical Applications of Va., Inc.*, 275 Va. 1, 7 (2008) (concluding that expert testimony is not necessary where the plaintiff alleged she was injured after she was placed in a defective chair and based upon the plaintiff's allegations "a jury could find that [the] defendant's employees place the plaintiff in a defective chair even though they had knowledge that the chair was not safe"); *Dickerson v. Fatehi*, 253 Va. 324, 327 (1997) (concluding that the trial court erred in ruling that expert testimony was necessary to establish the standard of care where the record before the court suggests that "the jurors, absent expert testimony, reasonably could determine, by calling upon their common knowledge and experience, whether [the defendant] was negligent and whether his negligence was a proximate cause of [the plaintiff's] injuries").  Expert testimony on the applicable standard of care is not required here.

### b.    Duty and Breach

In Virginia, an owner of premises owes an invitee, the duty to exercise ordinary care. *Colonial Stores Inc. v. Pulley*, 203 Va. 525, 537 (1962).  In doing so, an owner is "required to have the premises in a reasonably safe condition for [an invitee] to visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the plaintiff of the unsafe condition if it

was unknown to her, but was, or should have been, known to the defendant." *Id.* "In premises liability cases, the plaintiff must introduce evidence of the responsible person's actual or constructive knowledge of a defective condition on the premises to establish a *prima facie* case of negligence." *Grim v. Rahe, Inc.*, 434 S.E.2d 888, 889 (Va. 1993).

Defendants argue they are entitled to summary judgment because Plaintiff cannot establish constructive notice.  (ECF No. 56-1 at 17.)  In response, Plaintiff maintains that such "notice can be imputed to Defendants when the hazardous or unsafe condition resulted from the affirmative conduct of its employees or agents."  (ECF No. 57 at 4.)

"In slip-and-fall negligence cases, Virginia law differentiates between dangerous conditions caused by 'affirmative conduct' of the defendant, and those resulting from 'passive conduct.'" *Turley v. Costco Wholesale Corp.*, 220 F. App'x 179, 181 (4th Cir. 2007).  "Where the premises owner's own affirmative conduct causes the unsafe condition, notice of the condition is imputed to the owner provided the danger is reasonably foreseeable." *Logan v. Boddie-Noell Enters., Inc.*, No. 4:11-cv-8, 2012 WL 135284, at *5 (W.D. Va. Jan. 18, 2012); *see Memco Stores, Inc. v. Yeatman*, 232 Va. 50, 55 (1986) (holding that "[i]f an ordinarily prudent person, given the facts and circumstances [the defendant] knew or should have known, could have foreseen the risk of danger resulting from such circumstances, [the defendant] had a duty to exercise reasonable care to avoid the genesis of the danger").

In contrast, "[i]n the absence of evidence showing some affirmative conduct of the defendant caused the dangerous condition, the plaintiff must show that the defendant had actual or constructive knowledge of the condition." *Cook v. Wal-Mart Stores, East, L.P.*, No. 1:19-cv-31, 2020 WL 7481781, at *4 (W.D. Va. Dec. 18, 2020); *see Ashby v. Faison & Associates, Inc.*, 247 Va. 166, 170 (1994) (holding that if the dangerous condition results from passive conduct, "the

applicable standard is whether the defendants had actual or constructive notice, that is, whether they knew or should have known, of the presence of the water that caused [the plaintiff's] fall and failed to remove it within a reasonable time or to warn of its presence").

Defendants argue: "there is no evidence of any defective condition or the existence of any substance or liquid from the time Plaintiff arrived in the federal building and the exact moment of her slip and fall."  (ECF No. 56-1 at 17.)  Relying on *Ashby*, Defendants argue there is no evidence of affirmative conduct by Defendants; therefore, the applicable standard is whether Defendants had actual or constructive notice of the water, and either failed to remove it in a reasonable time or failed to warn of its presence.  (ECF No. 58 at 7.)  In contrast, Plaintiff argues that Defendants' maintenance workers had recently mopped the floor before her fall, triggering the foreseeability standard set forth in *Yeatman*.  (ECF No. 57 at 6-7.)

The precise issue, therefore, is whether the alleged dangerous condition was caused by affirmative or passive conduct.  Plaintiff testified at deposition:

> Q. My question is a little bit different. My question is: You testified a moment ago that you fell, that you felt like you were going under, but you saw somebody who was 50 feet away. Is that right?
>
> A. No. I saw him 50 feet away as I was exiting. As I'm getting off the elevator I'm taking my one, two, three steps, and I see a guy at a distance mopping the floor. As I say "have a good day" I take my fifth step and I fall.
>
> Q. So let me see if I can capture what you said. The person that you saw 50 feet away, you saw him for the first time after you fell?
>
> A. When I get off the elevator and I take my first step I see the green jackets at the snack bar. I'm looking ahead of me. Again, I'm getting ready to exit the building. I see a guy mopping the floor about 50 feet away from me. I take that fourth step and say "have a good day," and as I take that fifth step my neck snapped back and I hit my head.

***

Q. And you testified that the person that's 50 feet away, you described him as a male. Is that right?

A. Yes

Q. And then you said you could see 50 feet away that he was mopping.

A. Yes. He had a mop in his hand. He was mopping the lobby. Correct.

Q. And when you first get off the elevator and before you turn left could you actually see this man 50 feet away?

A. When I first got off the elevator and I made that first left and I looked ahead of me in the distance I could see a guy mopping the floor up ahead of me.

(Johnson-Howard Dep. 221:1-19, 223:18-224:10.)

It is undisputed that Defendants' records include the following: on the date of the incident, March 7, 2016, an employee mopped the lobby, cleaned a spill in the lobby, and gathered the lobby trash.   (Pl.'s Opp., Exhibit 4, ECF No. 57-3 at 39.)   Additionally, uncontested records of Defendants, and offered by Plaintiff, indicate that on the date of the incident, March 7, 2016, seven employees spent a total of 17.5 hours working in the common areas.  *Id.* at 28, 30, 34-38.  Lastly, Plaintiff provided uncontested evidence that an employee ran a machine on the lobby floor and mopped the elevators on March 7, 2016.  *Id.* at 40.

Plaintiff has generated a genuine dispute of material fact as to whether Defendants "had notice of the existence of the water of on the floor, triggering a duty to warn against or remedy the dangerous condition."  *See Garlick v. Safeway, Inc.*, No. 082469, 2009 WL 3447286, at *1 (Va. Oct. 23, 2009).  Reasonable jurors could conclude that Plaintiff slipped and fell on water that the Defendants' employees left in the lobby during the course of mopping the floor.  It follows that a reasonable juror could also conclude Defendants had actual notice of the hazardous condition on

the floor because Defendants were mopping the floor.  "Negligence is an issue to be decided by a fact finder and is to be decided as a matter of law only when reasonable minds could not differ." *Garlick*, 2009 WL 3447286, at *2.  Defendants are not entitled to summary judgment on this basis.

### c.    Causation

Defendants also argue that Plaintiff has failed to offer "evidence of how or what she slipped and fell on."  (ECF No. 56-1 at 16.)  "To prove causation, the plaintiff must show that the defendant's negligence was the proximate cause of the plaintiff's damages."  *Marchant v. Boddie-Noell Enterprises, Inc.*, 344 F. Supp. 2d 495, 497 (W.D. Va. 2004).  "The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Beale v. Jones*, 210 Va. 519, 522 (1970).  "Virginia follows the 'but for' rule of proximate causation, which states that 'a defendant is not liable unless the harm would not have occurred but for the defendant's act.'"  *Marchant*, 344 F. Supp. 2d at 497 (quoting *McCauley v. Purdue Pharma L.P.*, 331 F. Supp. 2d 449, 461 (W.D. Va. 2004).  "Usually, proximate cause is a question of fact for the jury, but the court may resolve the question as a matter of law 'when reasonable persons could not differ as to its existence or absence.'"  *Id.* (quoting *McCauley*, 331 F. Supp. 2d at 461).

Viewing all inferences in the light most favorable to the non-movant, Plaintiff creates a genuine issue of material fact as to whether Defendants' alleged actions proximately caused her injuries.   As discussed in Section IV.B.2.b., *supra*, Plaintiff testified that she observed an employee mopping the lobby floor; and she has produced documentation (Defendants' records) that Defendants' employees mopped the lobby floor and elevators on the day of the incident. Although Plaintiff does not explicitly state what caused her fall, she testified:

Q.  Your testimony earlier, and I just want to confirm for the record, was that you weren't looking at the floor at any time after you got off the elevator. Correct?

A. No. The floor is pure white. I mean, there's nothing to see.

Q. When you saw at your third step the wet floor sign did you think that the floor could be wet in the area where he was mopping?

A. Yes.

Q. When you saw the wet floor sign at your third step did you think, Let me look down at the floor to make sure he didn't just mop in this area?

MS. MURRAY: Objection to the form. Go ahead and answer.

A. I would think that the wet floor sign would be where people are walking, and there wasn't any wet floor sign when I stepped off the elevator or within five steps in front of me, or ten steps, for that matter.

(Johnson-Howard Dep. 227:6-228:3.)  Plaintiff further testified that following the incident, she spoke with a man who helped her off the floor, and she "noticed that her hands were wet, and that her pants in the area of her buttocks were wet."  (Pl.'s Answers to Def.'s Interrog. No. 16, ECF No. 56-4.)

When considering Plaintiff's testimony, and the undisputed record evidence—that Defendants' employees mopped the floor on the day of the incident, and cleaned up a spill; Plaintiff observed an employee mopping the floor; and Plaintiff's pants and hands were wet after the fall in the lobby—a jury could reasonably conclude that Defendants' recent mopping of the lobby floor created a hazard that caused Plaintiff to slip and fall.  *See Marshall v. Wal-Mart*, 574 F. Supp. 2d 370, 376 (W.D. Va. 2021) (concluding that "a jury reasonably could find that an accumulation of water in the corridor between the bathrooms caused [the plaintiff] to fall where there was testimony that the plaintiff pants were dry before the fall and wet after; there was a pool of water just feet

19

away; and the plaintiff slipped inexplicably"); *see also Fobbs v. Webb Bldg. Ltd. P'ship*, 232 Va. 227, 230 (1986) (noting that "[o]bviously, facts need not be proved by direct evidence, but instead, may be established by circumstantial evidence. Indeed, a jury may draw all reasonable inferences and deductions from the evidence adduced.").

Reasonable minds could differ based on the evidence in the record as it relates to Plaintiff's negligence claim and a "plaintiff's claim may survive summary judgment if the evidence would allow a reasonable jury to conclude that the premises' owner had actual or constructive notice of the unsafe condition that caused her injury—*i.e.*, that the condition posed a foreseeable risk of danger to invitees and the owner had actual or imputable knowledge of the condition and its danger—and the jury could conclude that the owner was negligent in addressing the unsafe condition." *Hodge v Wal-Mart Stores, Inc.*, 360 F.3d 446, 452 (2004) (citing *O'Brien v. Everfast, Inc.*, 254 Va. 326, 330-331 (1997)).  On summary judgment, the court may not make credibility determinations or weigh the evidence.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000).  Accordingly, Defendants are not entitled to summary judgment on the basis of causation.

### d.      Damages

Defendants argue that, even if the court finds that Plaintiff has established a genuine dispute of material fact as to the elements of negligence, Plaintiff may not pursue lost wage damages because she has offered no evidence to support this remedy.  *Id.* at 19.

The burden is on the "plaintiff to prove the elements of her damage with reasonable certainty." *Gwaltney v. Reed*, 196 Va. 505, 507 (1954).  The plaintiff is not "required to prove with mathematical precision the exact sum she had lost, but having shown herself entitled to have

damages from the defendant it [is] her duty to furnish evidence of sufficient facts or circumstances to permit at least an intelligent and probable estimate thereof." *Id.*

Plaintiff demands damages for past lost wages for "the dates missed from work related to her medical treatment from March 7, 2016 through August 2018," but has failed to produce any evidence supporting a claim for past lost wages. (Pl.'s Answer to Defs.' Interrog. No. 20, ECF No. 57-3.)[3]  Plaintiff' also seeks damages for future lost wages, which are supported by Plaintiff's damages expert. (Thomas C. Borzilleri, Ph.D., Loss of Earning Capacity Report, ECF No. 57-3, Exhibit 7.)  To the extent Defendants take issue with Dr. Borzilleri's calculations, that is a matter to be tested at trial.  As to Defendants' argument that Plaintiff cannot prove past lost wages, if Plaintiff seeks to introduce evidence to recover past lost wages, the court will consider Defendant's trial objection when and if interposed (or motion *in limine*, if filed).  Defendants are not entitled to judgment as to Plaintiff's damages claim *en toto*.

## V.    CONCLUSION

For the reasons set forth herein, by separate order, Defendants' Motion for Summary Judgment (ECF No. 56) will be denied.


/S/

_____
Julie R. Rubin
United States District Judge

September 25, 2023

---

[3] Plaintiff's answers to interrogatories state that she would supplement her discovery production with evidence of her lost wages, but she did not do so. (Pl.'s Resp. to Defs.' Req. for Produc. Of Doc. No. 26, ECF No. 56-5.)  The record before the court does not include evidence of Plaintiff's alleged missed work dates or the hours for which she did not receive compensation for work from March 7, 2016, through August 2018.